FILED
CLERK, U.S. DISTRICT COURT

FEB - 1 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: RS           DEPUTY

S/N/I

Erika L. Lee
1054 E. Turmont St.
Carson, CA, 90746
646-552-8394. Email: leeerikalatise@gmail.com
ERIKA L. LEE, PRO SE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA (WESTERN)

**ERIKA L. LEE**
 Plaintiff, Pro Se

v,

**DELTA AIR LINES, INC.,
DANIELLE KRUIT, JOSE
ROSADO, DOES 1-10 , et. al**

 Defendants

**JURY TRAIL DEMANDED**

)
) **CASE:** 2:22-CV-00804-SVW-MRWx
) **VERIFIED COMPLAINT**
)     **FOR DAMAGES**
)
) 1) **DEFAMATION PER SE**
)    **(SLANDER AND LIBEL);**
) 2) **INTENTIONAL**
)    **INTERFERENCE WITH**
)    **PROSPECTIVE ECONOMIC**
)    **ADVANTAGE ;**
) 3) **BREACH OF IMPLIED**
)    **COVENANT OF GOOD FAITH**
)    **AND FAIR DEALING;**
) 4) **WRONGFUL TERMINATION**
)    **IN VIOLATION OF PUBIC**
)    **POLICY;**
) 5) **BREACH OF EXPRESS ORAL**
)    **CONTRACT NOT TO**
     **TERMINATE EMPLOYMENT**
     **W/O GOOD CAUSE;**
  6) **BREACH OF IMPLIED-IN-**
     **FACT CONTRACT NOT TO**
     **TERMINATE EMPLOYMENT**
     **W/O GOOD CAUSE;**
  7) **Labor Codes 201, 201.3, 201.5,**
     **201.9, 202,203, 205.5, 208, 213,**
     **226(b),227.3**
  8) **UCL(Violation of Business and**
     **Professions Code section 17200,**
     **etc.**
  9) **BREACH OF CONTRACT**

---

VERIFIED COMPLAINT FOR DAMAGES page 1

Scanned with CamScanner

Plaintiff Erika L. Lee proceeding Pro Se, for her **AMENDED VERIFIED COMPLAINT <u>FOR DAMAGES</u>** testifies as follows:

### Rule 8

1. **<u>SHORT & PLAIN STATEMENT (Rule 8):</u>**This lawsuit is based on Defendants Wrongful Termination of Plaintiff's employment on 06/17/2021 in Violation of Public Policy, Defendants publishing unprivileged, false, defamatory per se statements of purported facts about Plaintiff to third party California residents, Def. Delta's  breach of Plaintiff's 2 employment contracts (see attached Exhibits labelled as "CONTRACT 1" and "CONTRACT 2"), Defendants' Intentional Interference with Prospective Economic Advantage, etc. The facts giving rise to these causes of actions occurred or began to occur after 06/16/2021.

### JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C § 1332, this Court has original jurisdiction over Plaintiff's claims due to DIVERSITY, the events giving rise to these causes of actions occurred in this judicial district and the amount in controversy exceeds $75,000.

3. Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391 because this Court has personal jurisdiction over Defendants.  All of Defendants conduct occurred and/or began to occur in Los Angeles, CA _and/or was targeted at California residents, including but not limited to ___

Scanned with CamScanner

Plaintiff. Def. Delta is "at home" in this forum because Delta Airlines, Inc. contacts and/or daily business transactions within California are "continuous and systematic." Daimler AG v. Bauman 134 S. Ct. 746, 761 (2014). Def. Delta's agents and managers, in their professional capacities, intentionally published unprivileged, false, defamatory per se statements of purported facts about Plaintiff to third party California residents(Mayra Amezquita, Ashely and Evan, Richard Lorich, Erik H., etc) in 2021, which occurred exclusively in this judicial district. Additionally, Plaintiff was self compelled to republish Def. Delta's unprivileged, false, defamatory per se statements about Plaintiff to third party California residents in this judicial district. Def. Delta's managers and agents committed these intentional torts within the state of California, targeting a California audience. Def. Delta knew that Plaintiff would likely suffer harm in California, as Def. Delta was aware that Plaintiff has been a California resident since 2011, as Def. Delta specifically sent Plaintiff's libelous suspension and termination letters to California residents at a California USPS mailing addresses. *see Jones v. Calder, 138 Cal. App. 3d.128, 134 (1982), afford, 465 U.S.783 (1984) (out of state residents defaming California residents and/or targeted at a California audience makes California proper venue);* Paccar Int'l Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d 1058, 1064 (9th Cir. 1985); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803, (9th Cir.

VERIFIED COMPLAINT FOR DAMAGES page 3

Scanned with CamScanner

2004) All actions at issue in this case occurred in the State of California, County of Los Angeles.

## PARTIES

4. **Plaintiff, Erika L. Lee,** an individual, (herein referred to as "Erika" or "Plaintiff" or "Ms. Lee"), is/was a California resident at all times during which the events that gave rise to these claims occurred and at the time of filing the original complaint.  Plaintiff currently resides at 1054 E. Turmont St., Carson, CA, 90746. Plaintiff is domiciled in California.

5. **Defendant Delta Air Lines Inc., (**herein referred to as **"Delta" or "Def. Delta"**), is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Def. Delta's principal place of business ,headquarters and "nerve center" is located in Atlanta, Georgia. However, the following causes of action took place, was and is in the County of Los Angeles, where Def. Delta transacts business, at Delta's airline terminal at Los Angeles International Airport ("LAX"), at 1 World Way, Los Angeles, California 90045. According to sec.gov, Def. Delta alleges, "Delta is a Delaware corporation headquartered in Atlanta, Georgia."

---

VERIFIED COMPLAINT FOR DAMAGES page 4

Scanned with CamScanner

6. **Defendant Danielle Kruit ("Defendant" or "Kruit")** is, and at all times mentioned in this Complaint was, a HR Manager with Def. Delta, employed at Delta Air Lines, Inc.

7. **Defendant Jose Rosado ("Defendant" or "Rosado")** is currently a HR Manager with Def. Delta, employed at Delta Air Lines, Inc since early June 2021. However, before June 2021, Defendant Rosado was employed with JetBlue Airways.

8. **Doe defendants**: Defendants Does 1 to 10, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

9. **Relationship of defendants**: All defendants compelled, coerced, aided, and/or abetted the tortious acts giving rise to the claims in this suit.

Scanned with CamScanner

discrimination, retaliation, and harassment alleged in this Complaint, which All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

VERIFIED COMPLAINT FOR DAMAGES page 6

Scanned with CamScanner

10. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

**Plaintiff's protected status and activity:**

11. **Plaintiff's hiring:** Plaintiff began working for Def. Delta in September 2005.

12. **Plaintiff's job performance: In 2011, Plaintiff was employed at Delta Air Lines Inc. at San Diego Airport (SAN). From around 2012- 2014, Plaintiff then worked at Delta's LAX Cargo building. In or around 2014, Plaintiff then subsequently transferred to LAX Airport as a Customer Service Agent at Delta Air Lines, Inc.** Plaintiff has never been disciplined for "reliability" (latenesses and/or absences) at any time. Plaintiff did not have any form of "performance development" and/or "formal verbal coachings" and/or "written corrective action" in her personnel file at any time within the last 9 years of employment and/or at the time of her suspension in March 2021 and/or at the time of her termination in June 2021. Between 2012 and March 2021 and/or June 17, 2021, Plaintiff had been performing well in her current job position at all times.  From 2011- June 17, 2021,  Def. Delta had never informed Plaintiff that she was not performing competently in her position, and/or that Plaintiff was not performing competently while an active employee, working in her professional capacity.

---

Scanned with CamScanner

13. Plaintiff turned 40 at the very end of 2020. Around 3 months after Plaintiff turned 40, Plaintiff was threatened with termination and/or suspended without pay by Def. Delta. Before turning 40, Def. Tumpap referred to Plaintiff and other older female employees as "bag hags."

14. Plaintiff has several disabilities(mobility impairment, obesity (genetic), depression, stress, migraines, which affect major life activities of walking, standing, and working) . Plaintiff's migraines are/were her serious medical condition covered by the FMLA/CFRA from October 2018- March 2020.

15. Beginning in or around 2017, Plaintiff was a class member of at least 3 class action lawsuits filed against Delta Airlines for it's failure to pay wages and/or overtime to Plaintiff and her similarly situated California colleagues in violation of California state labor laws.

16. Beginning in September 2018 through May 2021,Plaintiff gave testimony based on her personal knowledge for other Delta employees and/or former Delta employees.

17. In May 2021, Def. Delta Airlines discovered that Plaintiff is/was a witness in another employees lawsuit and/or gave testimony in the form of a Declaration former Delta employees around March 2021.

---

VERIFIED COMPLAINT FOR DAMAGES page 8

18. On February 19, 2021, Plaintiff requested a reasonable accommodation(for a transfer to a job position where she could sit down (Cargo and/or at a Customer Service rebooking desk and for a chair) for her disability and opposed sex and race discrimination/harassment and/or an objectively/ subjectively perceived hostile work environment to Delta's HR Manage David Needham. On or around February 23, 2021, Plaintiff filed another DFEH/EEOC complaint, as she had only discovered on or around February 19, 2021 that Def. Delta Airlines had refused and failed to ever investigate any of her complaints from 2017 through February 19, 2021. In April 2021, Plaintiff filed another DFEH/EEOC complaint. On or around June 7, 2021, Plaintiff filed another DFEH/EEOC complaint. Upon information and belief, Def. Delta NEVER investigated Plaintiff's 2012-2014 complaints of a hostile work environment/sexual assault by Delta Manager Alberto Cuevas, while Plaintiff was employed at Delta's LAX Cargo building.

19. Plaintiff requested a reasonable accommodation on 02/19/2021 to Delta HR Manager David Needham and then again asked for another reasonable accommodation on or around 03/25/2021 to Delta HR Manager Kelly Nabors, and/or then again asked for another reasonable accommodation on or around 04/02/2021, and/or then again asked for another reasonable accommodation in the month of April 2021 via email to HR Manager _Danielle Kruit, and/or then again asked for another reasonable _____

Scanned with CamScanner

accommodation on or around 06/09/2021 to Danielle Kruit again. Plaintiff was terminated on 06/17/2021.

20. Beginning around early 2013 (Alberto Cuevas) and late 2017-early 2018 (Bernadette Tamasi), Plaintiff directly and/or indirectly complained about the unlawful discrimination, hostile work environment, harassment, and retaliation that she experienced as a result of her race, disability, age and sex perpetuated by Delta Managers Bernadette Tomasi and/or Def. Joseph Tumpap to Defendant Delta HR Managers, including but not limited to Def. Ashley Rangel. In April 2019, Plaintiff had a meeting with Delta's Equal Opportunity  or "EO" Department and formally made all of these complaints about Def. Rangel, Def. Tumpap, and Delta Manager Bernadette Tomasi to the Delta "EO" HR Manager during a phone conversation, including but not limited to Delta Manager Bernadette Tomasi forcing Plaintiff to wear "heels," as Delta Manager Bernadette Tomasi demanded that Plaintiff "look sexy" because Delta Manager Bernadette Tomasi told Plaintiff, "I want to see them big black ass cheeks switching when you walk." But because Plaintiff is/was disabled with a mobility impairment, it was not physically possible for Plaintiff to wear "heels" as Tomasi, in her professional capacity, demanded when white women were not required to wear heels, as Delta's written uniform policy allows females to wear flat shoes, and Plaintiff was threatened with suspension and adverse employment actions if she didn't

VERIFIED COMPLAINT FOR DAMAGES page 10

Scanned with CamScanner

wear heels, "look sexy" and/or acquiesce to Tomasi's sexual requests for lesbian sex. Immediately after Plaintiff made these formal complaints to Delta's EO HR Manager in April 2019, Plaintiff was immediately suspended without pay for 2 weeks in April 2019, suffering economic harm in retaliation for opposing race/disability/sex discrimination. Plaintiff also requested a reasonable accommodation Delta's EO Manage on this telephonic conference on April 2019, whereby Delta's EO Manager refused to engage in the interactive process and/or denied Plaintiff's request for a reasonable accommodation, while refusing to accept any medical documentation and/or refusing to speak to Plaintiff's doctor, as Def. Delta had always done with similarly situated white female comparators, such as Jennifer Palmer. Delta's violations were tolled e , as Plaintiff had a meeting with DFEH the following week, based on Plaintiff's October 2018 charge and/or this was a continual violation that Plaintiff continued being subjected to by Def. Delta through June 2021, as Def. Delta always refused to engage in the interactive process and denied Plaintiff's reasonable accommodations and/or refused to investigate any of Plaintiff's complaints of race/disability/sex discrimination.

21.From around 2012, Plaintiff complained about the unlawful discrimination, harassment, hostile work environment by Delta Manager Alberto Cuevas _that she experienced as a result of her race, disability (obesity), and sex._

VERIFIED COMPLAINT FOR DAMAGES page 11

Scanned with CamScanner

22. Plaintiff was wrongfully terminated by Delta Airlines on 06/17/2021 in retaliation for opposing illegal discrimination and retaliation. This was also a Breach of Plaintiff's **Ready Reserve employment contract ("CONTRACT 1")** , which was set to expire in around early July 2021. **FULL-TIME DELTA EMPLOYMENT CONTRACT("CONTRACT 2"):** Around March 2021, Plaintiff and Delta's formed a new employment contract, whereby Delta Airlines would begin employing Plaintiff as a full time Delta employee effective in July 2021, whereby Plaintiff would be entitled to all benefits that Delta full time employees receive, including but not limited to health insurance, pass travel benefits, shared rewards, 401k matching, interline travel discounts, profit sharing, etc. Def. Delta's new July 2021 employment contract with Plaintiff was based on California law, as Plaintiff was living in California at the time of her contract and in late March 2021, Plaintiff did not have pass travel benefits to travel out of the state of California and Plaintiff was also informed on or around March 25, 2021 that she could began her July 2021 full-time employment in a California Delta airport or cargo location.

23. **Defendants' additional retaliatory adverse employment actions based on Plaintiff's First Amendment speech outside of her professional capacity.** Def. Delta retaliated against Plaintiff immediately after Plaintiff provided sworn statements in a Declaration for another employee/former

VERIFIED COMPLAINT FOR DAMAGES page 12

Scanned with CamScanner

employees and/or imminent testimony and/or testimony in September 2018 and/or July 2019 and/or October 2019 and/or November 2019 and/or 2020 and/or December 2019 and/or February 2021 and/or March 2021 and/or April 2021 and/or May 2021 and/or June 2021 to either EEOC/DFEH and/or to Federal courts and/or State Courts and/or Workers Compensation hearings, which were at all times outside the scope of Plaintiff's ordinary job duties, as Plaintiff was engaged in speech as a citizen for First Amendment purposes. (Lane v. Franks, 134 S. Ct. 2369, 2378 (2014).(" Stilwell's sworn statement and imminent testimony were "outside the scope of his ordinary job duties," which means that he was engaged in "speech as a citizen for First Amendment purposes." Id. (explaining that an employee's testimony in response to a subpoena about his employer's practices was "outside the scope of his ordinary job duties" and thus "speech as a citizen"). Stilwell v. City of Williams, 831 F.3d 1234 (9th Cir. 2016)).

24. **Defendants' additional retaliatory adverse employment actions based on Plaintiff's filing and/or expressing her intention to file a Workers Compensation Claim.** In September 2018, Plaintiff advised Def. Rangel that Plaintiff was going to engage with a lawyer to file a workers compensation claim for Plaintiff's physical workplace injuries and the severe emotional distress that Delta's mangers, including but not limited to Def. _Tumpap and Tamasi have subjected Plaintiff to. Around 3 weeks later, in _

VERIFIED COMPLAINT FOR DAMAGES page 13

Scanned with CamScanner

October 2018, Def. Delta and/or Def. Rangel and/or Def. Tumpap revoked Plaintiff's material benefits and threatened Plaintiff without suspension and/or termination if Plaintiff engaged with a lawyer to file a workers compensation claim for her severe emotional distress and/or physical workplace injuries sustained at Delta Air Lines, Inc's LAX airport. Again in April 2019, Plaintiff advised Delta's Equal Opportunity Department that Plaintiff was engaging with a lawyer to file a Workers Compensation Claim for her severe emotional distress and/or physical workplace injuries sustained at Delta Air Lines, Inc's LAX airport. Plaintiff was immediately suspended without pay.  In July 2019, Plaintiff's lawyer filed a Workers Compensation claim.

25. At all times from 2012- 2021, Plaintiff was performing competently in her job positions at Delta Air Lines, Inc.

## FACTS COMMON TO ALL CAUSES OF ACTION:

### DEFAMATION            (LIBEL PER SE AND SLANDER PER SE)

26. Beginning around late March 2021 through July 2021, Defendant Delta and/or Delta Air Lines, Inc's managers, including but not limited to,  Def. Jose Rosado and Def. Daniele Kruit, began publishing and/or republishing unprivileged, false statements of purported facts about Plaintiff to third party

VERIFIED COMPLAINT FOR DAMAGES page 14

Scanned with CamScanner

California residents, including but not limited to Mayra Amezquita, Richard Lorich, Delta Los Angeles Department 125 agents, Ashley and Evan, etc. that Plaintiff was suspended and/or terminated for being "dishonest" and/or a "liar" and/or for committing the crime of "workers comp fraud."

27. **As evidenced by Exhibit 28,** around April 2021, Def. Delta and/or Def. Delta's Manager Danielle Kruit published and/or republished unprivileged, false, defamatory per se statements of purported facts about Plaintiff to California residents, Mayra Amezquita and/or Ashley and Evan and/or Richard Lorich, and/or Kelly Nabors and/or Jose Rosado and/or other Def. Delta Air Lines, Inc. managers, that Plaintiff engaged in some sort of "dishonest behavior" in Def. Delta's March 26,2021 "Suspension Letter." (**see Exhibit 28**) (**LIBEL PER SE**) (CCP 46 (3))

28. As evidenced by Exhibits A and 28, Def. Delta and/or Def. Delta's Manager Danielle Kruit never disclosed any facts to support her unprivileged, false statements of purported facts about Plaintiff and/or that Plaintiff engaged in some sort of "dishonest behavior" in Def. Delta's March 26,2021 "Suspension Letter" that Def. Delta and/or Def. Kruit and/or Def. Delta's mangers published and/or republished to third parties, including but not limited to California residents, Mayra Amezquita (Southwest Airlines) and/or Ashley and Evan (non airline employees) and/or Richard Lorich, and/or David Needham and/or Kelly Nabors and/or Jose Rosado(who was working at

Scanned with CamScanner

JetBlue Airways from March 2021- June 2021) and Erik H. (JetBlue Airways employees).

29. Delta HR Manager Jose Rosado was employed by JetBlue Airways from March 2021 through around early June 2021 and/or was not employed by Def. Delta Air Lines, Inc. until around early June 2021.

30. As evidenced by Exhibit B attached, On June 17, 2021, Def. Jose Rosado began publishing, false unprivileged statements of purported facts that "We initially reached out to you on March 26, 2021 to inform you that you were suspended… in connection with our investigation of a complaint that you had been dishonest in connection with your relations with Delta…In light of the foregoing, Delta has decided to terminate your employment, effective immediately, on that grounds that it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta. Your failure to cooperate during the investigation also constitutes insubordination…"

31. Def. Jose Rosado has/had no personal, firsthand knowledge of the purported facts that he published in Exhibit B, as he was not a Delta employee at the time and did not conduct any "interview" with Plaintiff.

32. In February 2021, Defendant Delta's HR Manager David Needham republished Def. Danielle Kruit's unprivileged, false, defamatory per se statements of purported facts about Plaintiff to Plaintiff that *"Erika Lee is a*

VERIFIED COMPLAINT FOR DAMAGES page 16

Scanned with CamScanner

*liar and a fraud, who was never sexually harassed and sexually*

*assaulted by Bernadette Kamasi, and Delta has intel that Erika*

*committed workers compensation fraud because she never hurt her*

*back at LAX airport."*

33. On or around May 22, 2021, Def. Delta and/or Def. Delta's managing agent, Purser/Supervisor Richard Lorich, who was in his professional capacity, published and/or republished these unprivileged, false, defamatory per se statements of purported facts about Plaintiff to Southwest Airlines employee, Mayra Amezquita, a California resident, and/or other third parties, that Plaintiff is *"a liar and a fraud who got caught lying and committing workers compensation fraud on Delta by faking workplace injuries for years to both steal money from Delta and to get paid time off from Delta. A few weeks ago, Delta finally caught Erika lying and doing workers comp fraud while she was out on another workers comp leave trying to steal more money from Delta without working, and Delta suspended her and terminated her for lying and for workers comp fraud. Do you still talk to Erika? Have you heard this about her? She's going to go to jail for doing this fraud and she's going to have to pay Delta restitution. Everybody is talking about Erika in New York and LA. Just the other day, one of the LAX gate agents, was like the fifth person*

---

VERIFIED COMPLAINT FOR DAMAGES page 17

Scanned with CamScanner

*to tell me this story about how finally after all these years, Erika got caught committing workers comp fraud." (SLANDER PER SE)*

34. In April 2021, Plaintiff was *self-compelled* to republish Def. Delta and/or and/or Def. Danielle Kruit's published unprivileged, false, defamatory per se statements of purported facts about Plaintiff in *Exhibit 28* to Plaintiff's landlord, Christal Johnson, a third party California resident, when Plaintiff was compelled to ask Christal Johnson, for an extension of time for Plaintiff to pay past due and/or current rent owed.

35. In May 2021. Plaintiff was *self-compelled* to republish Def. Delta and/or and/or Def.Danielle Kruit's published unprivileged, false, defamatory per se statements of purported facts about Plaintiff in *Exhibit 28* to third party California resident, Datev Kechichian at Gutierrez, Preciado & House, LLP, a future prospective employer, third party California resident, that Plaintiff is a *"fraud" and/or a "liar" and/or that Plaintiff was "currently suspended without pay from Delta Air Lines,Inc. since March 2021 for dishonest behavior."*                    <u>*Intentional Interference*</u>

<u>*with Prospective Economic Advantage*</u>

36. Erik Hildebrandt, a California resident,  was a former Delta Manager for around 9 years, who worked at multiple locations, including Los Angeles (LAX) where Plaintiff was employed, and (JFK).

---

VERIFIED COMPLAINT FOR DAMAGES page 18

Scanned with CamScanner

37. Plaintiff informed Def. Delta's Manager Jose Rosado on or around June 17, 2021 that she had an economic relationship with Erik Hildebrandt, who is currently a Director at JetBlue, and who used to be a Delta Manager. Plaintiff informed Def. Jose Rosado that Erik Hildebrandt promised to help Plaintiff get a job at JetBlue.

38. Before Plaintiff was terminated on or around June 17, 2021 from Delta Airlines, Erik Hildebrandt, as a Regional Manager/ Director at JetBlue, promised Plaintiff that he would get her a job at JetBlue Airways in California.

39. On or around 06/17/2021, Plaintiff demanded Def.Jose Rosado Cease and Desist from publishing and/or republishing defamatory per se statements that he published in the termination letter he wrote on 06/17/2021.

(*DEFAMATION PER SE*)

40. On or around 06/17/2021, Plaintiff demanded that Def. Rosado materially change and/or retract his false, unprivileged defamatory per se statements he published about Plaintiff in in the termination letter he wrote on 06/17/2021.

41. .In July 2021, Plaintiff saw a Management Position posted on JetBlue's website, which Plaintiff wanted to pursue, as she met the education and experience requirements in the posted ad.

42. In July 2021, Plaintiff spoke to Erik Hildebrandt about helping her get this specific  Managerial job at Jetblue Airways Plaintiff met the qualifications.

VERIFIED COMPLAINT FOR DAMAGES page 19

Scanned with CamScanner

Erik Hildebrandt then informed Plaintiff that Def.Rosado, Def. Delta's Manager, who used to work at JetBlue, told Erik H. that, "*I fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee." (SLANDER PER SE)*

43. In July 2021, Plaintiff then was *self-compelled* to republish (Exhibits A-D and Exhibit 28,) Def. Delta's published false, unprivileged defamatory per se statements of purported facts of and concerning Plaintiff that Def. Rosado and Def. Kruit's previously published to Mayra Amezquita, a Southwest Airlines employee, to explain to Erik Hildebrandt at JetBlue that Def. Rosado has no personal knowledge of the purported facts that Rosado had published to Erik about Plaintiff, explaining that  Rosado was only republishing Def. Kruit's false, defamatory per se statements about Plaintiff. After, Def. Rosado published these statements about Plaintiff to Erik Hildebrandt, Erik told Plaintiff, John Guillere and Aasir Azzarmi, who were present, that he was no longer able to help Plaintiff get a job at JetBlue Airlines.

44. Plaintiff had an economic relationship with Erik Hildebrandt with the probability of future economic benefit to Plaintiff.

45. Def. Rosado had knowledge of the relationship between Plaintiff and Erik Hildebrandt, because Plaintiff informed Def. Rosado that ex-Delta Manager

Scanned with CamScanner

Erik was the Director at JetBlue who had offered to help Plaintiff secure a job at JetBlue Airlines.

46. In or around July 2021, Def. Rosado published unprivileged, false, defamatory per se statements of purported facts about Plaintiff to Erik Hildebrandt at JetBlue Airlines which were made with the specific intent to disrupt the economic relationship between Plaintiff and Erik Hildebrandt at JetBlue Airlines.

47. Def. Rosado's intentional unprivileged, false, defamatory per se statements of and concerning Plaintiff published to Erik Hildebrandt at JetBlue Airlines in or around July 2021 were designed to disrupt the economic relationship between Plaintiff and Erik.

48. Def. Rosado's unprivileged, false, published defamatory per se statements of purported facts about Plaintiff to Erik Hildebrandt at JetBlue Airlines in or around June/July 2021 disrupted the economic relationship between Plaintiff and Erik.

49. Def. Rosado's 2021, intentionally false, unprivileged, defamatory per se statements of purported facts about Plaintiff to third party, Erik H. at JetBlue Airways, caused Plaintiff to lose a prospective job at Jetblue, and/or income and/or other types of compensation and benefits related to Plaintiff's prospective economic relationship with Erik.

---

VERIFIED COMPLAINT FOR DAMAGES page 21

Scanned with CamScanner

50. The economic harm Plaintiff sustained was proximately caused by the acts of Defendant Delta's Manager, Def. Jose Rosado and/or Def. Delta Airlines, Inc and/or Delta Manager, Def. Danielle Kruit  (see Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1153.

**WRONGFUL TERMINATION IN VIOLATION OF PUBIC POLICY (TAMENY);**

51.From September 2005- June 17, 2021 Plaintiff and Def. Delta Air Lines, Inc. had an employer-employee relationship,

52..Def. Delta Airlines, Inc. terminated Plaintiff's employment on or around 06/17/2021.

53.Plaintiff's termination was substantially motivated by a violation of public policy as Def. Delta Airlines terminated Plaintiff in retaliation for exercising her rights under the FEHA and/or Title VII and/or ADA and/or 42 USC 1981, as Plaintiff, on or around *March 25, 2021, made a complaint to Def. Delta's Equal Opportunity Department opposing sexual/racial harassment and/or sexual assault by Def. Delta Manager Ms. Tamasi, who "spanked" Plaintiff's butt in mid 2020.* See Rojo v. Kliger (1990) 276 Cal. Rptr. 130, 52 Cal. 3d 65, 801 P.2d 373. Or in the alternative, Plaintiff's termination was also substantially motivated by a violation of public policy as Def. Delta Airlines terminated Plaintiff in retaliation for expressing that Plaintiff was engaging with an attorney to file a workers compensation claim while also requesting

Scanned with CamScanner

several reasonable accommodations on or around March 25, 2021, on April 1, 2021, April 12, 2021, June 8, 2021, which all occurred less than 3 months before Plaintiffs termination, filing this lawsuit which is protected activity, filing a FEHA charge and/or EEOC complaint in February 2021, filing an EEOC charge less than 3 months before termination on or around April 15, 2012, exercising rights under the FMLA/CFRA to take medical leave, requesting a transfer based on Plaintiff's disability, and Delta Airlines Inc.'s HR Manager Danielle Kruit received "information" on or around March 26, 2021 that Plaintiff was sexually "spanked" by Delta Manager Ms. Tamasi, a lesbian white woman, etc."See Santillan v. USA Waste of Cal., 853 F.3d 1035 ( 9th Cir. 2017). See Hartman v. Mathis & Bolinger Furniture Co., 230 Cal. App. 3d 1163, 282 Cal. Rptr. 35 (1991);940 F.2d 1535 (9th Cir. 1991) City of Moorpark v. Superior Court, the court held that "[S]ection 132a does not provide an exclusive remedy and does not preclude an employee from...[a] common law wrongful discharge remed[y]." 18 Cal. 4th 1143,1158 (Cal. 1998).'[a]ny employer who  discharges, or threatens to discharge' an employee for filing an application for or receiving workers' compensation benefits commits a misdemeanor and is subject to severe penalties." Jersey v. John Muir Med. Ctr., 97 Cal. App. 4th 814, 824 (2002)(quoting Cal. Lab. Code ¶ 132a). Thus, "a discharge in violation of section 132a likewise may

---

Scanned with CamScanner

support a [**wrongful termination] cause of action.**" Id.; City of Moorpark, 18 Cal. 4th 1143, 1158-1161 (Cal. 1998).

54. Plaintiff filed for workers compensation and/or made known her intentions to file for workers compensation several times beginning in or around late September/October 2018 to Def. Tumpap and/or Def. Rangel and then again to Delta's Equal Opportunity Department, Kelly Nabors, on or around March 25, 2021.

55. Around October 2018 and/or April 2019 and/or March 26, 2021, Def. Delta Airlines threatened to fire and/or fired and/or took adverse employment actions against Plaintiff including but not limited to : FMLA interference/ retaliation, revocation of material benefits (pass travel benefits), revocation of shift swapping benefits, revocation of seniority shift bidding, revocation of ability to use PPT, denial of ability to make income (all of which were in breach of Plaintiff's Ready Reserve employment contract- See "Contract 1", refusal to accommodate disabilities, refusal to engage in interactive process, denial of available transfers, suspension without pay ( April 2019 and March 2021), and termination for filing and/or attempting to file her Workers Compensation claims.

56. Around October 2018 and/or April 2019 and/or March 25, 2021, Def. Delta Airlines singled Plaintiff out for disadvantageous treatment in retaliation for sustaining a workers compensation injury and/or retaliation for  the filing of

VERIFIED COMPLAINT FOR DAMAGES page 24

Scanned with CamScanner

workers compensation claim and/or attempting to file and/or for testifying in another employees workers compensation case and/or retaliation for engaging with a lawyer to file a workers compensation claim.

57. In April 2019 and/or March 2021 , during Plaintiff's scheduled formal conference call with Def. Delta's Equal Opportunity Department, Plaintiff made known her intentions to file for an additional workers compensation claim to Def. Delta's Equal Opportunity Department for her psychotherapy due to the continuing hostile work environment since 2012.

58. In April 2019 and/or March 2021, immediately after Plaintiff made known her intentions to file another workers compensation claim to Def. Delta's Equal Opportunity Department for her severe emotional distress for psychotherapy due to the continual hostile work environment since 2012 with Alberto Cuevas through 2019 and/or 2021, Plaintiff was immediately suspended for 2 weeks without pay in April 2019 and then again suspended for almost 3 months without pay again in late  March 2021, causing Plaintiff to suffer economic harm and lost wages.

59. In July 2019, Def. Delta and/or Def. Delta's TPA, Sedgwick CMS, was aware that Plaintiff engaged in protected activity, when she engaged with an attorney to file an workers compensation claim.

60. The discharge by Def. Delta Airlines, Inc. caused plaintiff economic, reputational, physical (migraines, IBS) and severe psychological harm

VERIFIED COMPLAINT FOR DAMAGES page 25

Scanned with CamScanner

(depression, stress, anxiety), as Def. Delta and/or its managing agents told prospective employers, and/or third party California residents that Plaintiff was terminated for being a "liar" and/or "dishonest" and/or for "dishonest behavior" and/or for crimes of "workers compensation fraud" and/or insurance "fraud." Def. Delta's failure to prevent the sexual and racial and disability discrimination by Manager Cuevas and/or Ms. Tamasi and/or Def. Tumpap and/or Def. Rangel caused plaintiff to suffer severe emotional physical mental and psychological distress, loss to her professional reputation, loss of income, loss of future employment opportunities and irreparable harm to her personal reputation by branding Plaintiff a "liar" and/or "fraud," who is "dishonest" and/or who committed "dishonest behavior" in her "relations with" Def. Delta, and that Plaintiff was terminated for "insubordination."

61. Plaintiff was not suspended and/or terminated for "dishonest behavior" and/or for the reasons that Def. Delta's managing agents alleged in Exhibits A-D.

62. As evidenced by **Exhibit 25**, Def. Delta and/or Kelly Nabors and/or Def. Delta's Equal Opportunity Department regularly issues Close-Out letters after Def. Delta and/or Kelly Nabors and/or Def. Delta's Equal Opportunity Department conduct investigations into sexual harassment.

63. As evidenced by **Exhibit 25,** Def. Delta and/or Kelly Nabors and/or Def. Delta's Equal Opportunity Department issued Close-Out letter to ***Donya***

Scanned with CamScanner

**_Williams, a similarly situated black Delta female employee,_** after Def.
Delta and/or Kelly Nabors and/or Def. Delta's Equal Opportunity Department
conducted an investigation into Donya William's complaint to Def. Delta's
Equal Opportunity Department, where Donya Williams also opposed sexual
harassment/sex discrimination in the workplace.

64. Def. Delta and/or Kelly Nabors and/or Def. Delta's Equal Opportunity
Department never issued Plaintiff a Close-Out letter at anytime from 2013
(Cuevas) through April 2019(Cuevas, Tumpap, Rangel, Tamasi) and/or
through March 2021 (Cuevas, Tumpap, Rangel, Tamasi) , after Def. Delta
and/or Def. Kruit alleged in 2021 that they previously investigated Plaintiff's
complaint/claims of being "spanked" by Ms. Tamasi in April 2019 and/or
Plaintiff's complaints of Def. Rangel and/or Def. Tumpap and/or Manager
Cuevas's conduct (discrimination, retaliation, hostile work environment,
threats of violence, refusal to engage in interactive process, impairment of
Ready Reserve employment contract because of Plaintiff's race, failure to
pay Plaintiff her earned wages, etc.)

65. Def. Delta's Rules of the Road, The Way we Fly, and Delta's Employee
Handbook are Delta's written contracts with Plaintiff and/or Delta's
employees.

66. Def. Delta has never been able to specifically cite the exact written Delta
policy violation that warranted termination of Plaintiff's employment contract.

Scanned with CamScanner

67. Plaintiff does not know of any other similarly situated Delta employee who has been previously terminated by Def. Delta for the same, alleged unwritten policy violation of "dishonest conduct," while not in his or her professional capacity and/or when the similarly situated Delta employee was on an unpaid leave of absence.

68. Def. Delta terminated Plaintiff's employment for an alleged unwritten violation of company policy.

69. Def. Delta disparately disciplined Plaintiff by terminating Plaintiff's employment on 06/17/2021, by skipping all steps in Def.Delta's progressive discipline policy in retaliation for Plaintiff engaging in protected activity(filing DFEH/EEOC complaints, exercising First Amendment rights, opposing Labor Code violations, opposing illegal discrimination/retaliation/requesting reasonable accommodations)from February 2021 through June 2021.

70. Plaintiff was not suspended and/or terminated for "dishonest behavior" and/or "insubordination" and/or for the reasons that Def. Delta's managing agents alleged in Exhibits A-D..

71. Def. Delta does not terminate employees, who are similarly situated to Plaintiff in all material aspects, for third party hearsay statements and/or "dishonest behavior" that occurs off-duty and/or while not in the workplace and/or while Delta employees are not in their professional capacity and/or for filing an EEOC/DFEH charge.

VERIFIED COMPLAINT FOR DAMAGES page 28

Scanned with CamScanner

72. As evidenced by "Exhibit E," Delta HR Manger Eve Rogers testified that Joanne Roy, a similarly situated white female Delta employee in all material aspects, was given "yet another opportunity to correct her performance issues."

73. As evidenced by Exhibit E (#40-53) , although Plaintiff never engaged in "dishonest behavior" at any time, Plaintiff, because of her race(black), was treated disparately differently than Joanne Roy, a similarly situated white female Delta employee, who Def. Delta applied their progressive discipline policy to, as Joanne Roy was given multiple opportunities by Def. Delta to "correct her performance issues" because of Joanne Roy's race (white).

74. As evidenced by Exhibit E (#46) and (#53), Joanne Roy, a similarly situated white female, had a lot of *"performance issues"*, as well as making offensive, *harassing gender based discriminatory comments targeting male Delta employees, calling males "dickheads" because of their gender*, whereas Def. Delta did not terminate or suspend Joanne Roy based on her first violation of Delta company policy as Def. Delta disparately did to Plaintiff, a black female, when Delta alleged in March 26, 2021 that Plaintiff committed her first performance issue, when Plaintiff allegedly engaged in "dishonest behavior" while off-duty and not in her professional capacity.

---

VERIFIED COMPLAINT FOR DAMAGES page 29

Scanned with CamScanner

75. As evidenced by Exhibit F (page 30), *"Upon termination of employment, all flight privileges (including Family & Friends tickets) expire effective the date of termination."*

BREACH of CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;WRONGFUL TERMINATION IN VIOLATION OF PUBIC POLICY;BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT W/O GOOD CAUSE;BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT W/O GOOD CAUSE;

76. Def. Delta  has a progressive discipline policy.

77. Def. Delta breached its employment contract with Plaintiff by terminating Plaintiff without good cause based on an alleged unwritten Delta policy.

78. Def. Delta did not apply their progressive discipline policy to Plaintiff when Plaintiff allegedly violated Delta company policy with "dishonest behavior," where Def. Delta suspended Plaintiff on or around 03/26/2021 and/or then subsequently terminated Plaintiff on June 17, 2021

79. Def. Delta always applies their progressive discipline policy to Delta employees, including but not limited to Delta employees who are/were similarly situated to Plaintiff in all material aspects.

80. Since around September 2005 and again around February 2006, numerous times between February 2006- March 26, 2021,Def. Delta, through its

VERIFIED COMPLAINT FOR DAMAGES page 30

Scanned with CamScanner

managing agents and/or HR Department, made oral assurances of continued employment to Plaintiff.

81. Since 2005, Def. Delta orally promised Plaintiff that Plaintiff would never be terminated without cause, as Delta promised that Def. Delta's progressive discipline policy is binding upon Plaintiff. (see Exhibit I attached to complaint)

82. On February 19, 2021 and/or in March 2021, Def. Delta, through its managing agents and HR Department, made oral assurances of continued employment to plaintiff by promising her that Delta only terminates employment for cause and/or for multiple violations of written company policy, and/or only after utilizing Delta's progressive discipline policy which includes either steps in that progressive discipline policy and/or written corrective action notices informing the employee of his or her violations of company policies with an opportunity for improvement of performance before termination.

83. At all times, Plaintiff and Defendant Delta shared the actual understanding that plaintiff's employment could and would be terminated only for cause, which would include 6-7 violations of Delta's written company policy and/or 6-7 opportunities for Plaintiff to improve and/or correct any performance issues/behavior that Def. Delta determined that Plaintiff was required to improve on and/or correct. (see Exhibit I attached to complaint)

---

VERIFIED COMPLAINT FOR DAMAGES page 31

Scanned with CamScanner

84. Defendant Delta shared the actual understanding which resulted in an implied contract requiring that Defendant Delta have good cause to terminate plaintiff's employment.

85. Upon information and belief, Def. Delta never found good cause to terminate other similarly situated white and/or non-black employees, who were "dishonest" in their "relations" with Def. Delta, while not in their professional capacity, and/or who have also violated the same alleged Delta policy, while in their professional capacity.

86. Plaintiff did not violate any Delta policy at any time, including but not limited to Delta's alleged "dishonesty" policy.

87. At no time was Plaintiff was not in her professional capacity as a Delta employee when. Def. Delta alleged that Plaintiff violated Delta's alleged policy which caused her termination.

88. Def. Delta  has an actual practice of terminating employment only for cause.

89. Def. Delta follows the airline industry standard for the business defendants engaged in of terminating employment only for cause.

90. Plaintiff and Def. Delta shared the actual understanding that plaintiff's employment could and would be terminated only for cause.

91. This shared understanding between Plaintiff and Delta resulted in an implied contract requiring Def. Delta have good cause to terminate plaintiff's employment.

VERIFIED COMPLAINT FOR DAMAGES page 32

Scanned with CamScanner

92. Defendant Delta and its' managers terminated Plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

93. .As a proximate result of Def. Delta's willful breach of the implied-in-fact contract not to terminate Plaintiff's employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof..

94. Defendant Delta's interference with Plaintiff's FMLA/CFRA rights from October 2018 through March 2020 by preventing Plaintiff from taking intermittent FMLA/CFRA leave beginning in October 2019, was also a breach of Plaintiff's Ready Reserve employment contract and/or an impairment of Plaintiff's Ready Reserve employment contract, in violation of 42 USC 1981.

95. When Def. Delta's interfered with Plaintiff's FMLA/CFRA rights beginning in October 2018 through March 30, 2020 by revoking Plaintiff's shift swapping benefits to pick up hours, Def. Delta also breached and/or impaired Plaintiff's Ready Reserve employment contract to prevent her from earning income, and/or ability to work up to 1300 hours from October 1, 2018- September 30, 2019 and/or from October 1, 2019 through September 30, 2020.

**UCL/Violations of California Labor Codes**

96. As evidenced by Exhibit Q, Plaintiff informed Def. Delta and/or Def. Danielle Kruit on or around 04/15/2021 that Delta was violating Labor Code 96k for suspending Plaintiff for "lawful off duty Conduct" and that Plaintiff was "being

VERIFIED COMPLAINT FOR DAMAGES page 33

Scanned with CamScanner

retaliated against under Labor Code section 96(k)," which violated California's UCL.

97. Def. Delta failed to provide Plaintiff's employment records, failed to pay wages upon discharge in violation of Labor Codes 201, 201.3, 201.5, 201.9, 202, 203, 205.5, 208, 213, 226(b), and unused, accrued vacation time under Labor Code 227.3, entitling Plaintiff to waiting time penalties.

98. Def. Delta violated the UCL by violating Plaintiff's rights under Article 1, Section 1 of the California Constitution gives each citizen an "inalienable right" to pursue and obtain "privacy."  California's constitutional right to privacy  guarantees the privacy right is "an inalienable right which may not be violated by anyone" including private parties. Def. Delta violated the UCL by intentionally invading Plaintiff's right to privacy, as Def. Delta

99. After Plaintiff informed Delta and/or Delta HR Manager Danielle Kruit on 04/15/2021 that Delta was violating Labor Code 96k for suspending Plaintiff for "lawful off duty conduct" and that Plaintiff was "being retaliated against under Labor Code section 96(k)," Def. Delta still intentionally, subsequently violated the UCL by terminating Plaintiff's employment after Def. Delta knew that Delta was violating California Labor Code 96k for suspending Plaintiff in retaliation for her legal off-duty conduct of Plaintiff's expressing that she was a filing a complaint with California's Labor Department and/or DFEH for Delta's violation of Labor Code section 96(k) and FEHA violations.

VERIFIED COMPLAINT FOR DAMAGES page 34

Scanned with CamScanner

100. Beginning around March 2021 through around July 2021, Def. Delta violated California's UCL by intentionally defaming Plaintiff by publishing unprivileged, false statements of purported facts about Plaintiff to third party California residents, including but not limited to Richard Lorich, Ashley & Evan, Mayra Amezquita, Erik H., etc., which violates California Civil Code Sections 44-48.

## FIRST CAUSE OF ACTION DEFAMATION PER SE(LIBEL & SLANDER) (Against Defendants Delta Air Lines, Inc., Danielle Kruit, and Jose Rosado) in Violation of Cal. Civ. Codes § 46(3) ,§ 46 & § 45a The Defamation

claims for Plaintiff is for "damages for harm DISTINCT from employment discrimination." quoted from Agarwal v. Johnson, (1979) 25 Cal. 3d.932, 954 n. 11, 160 Cal. Rptr. 141 603 P.2d 58. Libel per se is defined by Civ. Code § 45a as a "libel which is defamatory of the plaintiff without the necessity of explanatory matter." A statement is libel per se if "the defamatory meaning of [the statement] would be immediately apparent to any reader without knowing any facts beyond the face of the [statements]." Walker v. Kiousis (2001) 93 Cal.App.4th 1432, 1442.Libel/slander attaches in the context of employment, an employee of *"criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior."* (Jensen v. Hewlett-Packard Co. (1993) 14 Cal.App.4th 958,

Scanned with CamScanner

965.).False statements charging the commission of crime or tending directly to injure a plaintiff in respect to his or her profession by imputing **dishonesty *or questionable professional*** conduct are defamatory per se. See Weinberg v. Feisel (2003) 110 Cal.App.4th 1122, 1127; see Dickinson v. Cosby, 37 Cal.App. 5th 1138 (2019) ***"liar"***);  Burrilll v. Air (2013)217 Cal.App 4th 357, 384-385; Code § 46.Less particularity is required in a complaint alleging slander. See Scott v. Solano Cnty. Health and Soc. Servs. Dept., 459 F.Supp. 2d 959, 973 (E.D. Cal. 2006);*Semple v. Andrews,* 27 Cal. App. 2d 228, 232, 81 P.2d 203 (1938) (noting that the definition of slander set forth in § 46 is ***"very broad"*** and ***"has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally or with respect to his occupation");***Gill v. Hughes, 227 Cal. App. 3d 1299, 1309 (1991) (finding that the allegedly defamatory statement that plaintiff "is an incompetent surgeon" was an actionable, factual statement, because it "is susceptible of being proved true or false" and "implies that plaintiff is generally disqualified for his profession"); fraud is a crime. (Civ. Code, §§ 1572, 1709)

101.From March 26, 2021- July 2021, Defendants (Delta, Rosado, Kruit) published, false, unprivileged statements of purported facts of and concerning Plaintiff to third parties (California residents) stating that Delta "received information that you (referring to Plaintiff) **falsely represented"** **facts** and that Plaintiff's ***"misrepresentation…was intentional*,"** and/or that

VERIFIED COMPLAINT FOR DAMAGES page 36

Scanned with CamScanner

Delta "has decided to terminate your employment, effective immediately, on the grounds that *it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta*. Your failure to cooperate during the investigation also constitutes **insubordination,"** and/or publishing that Plaintiff was/is a *"fraud,"* and/or committed *"fraud,"* and/or is a **"liar"** and/or *"dishonest,"* and/or that Plaintiff was terminated and/or suspended for *"dishonest behavior."*

102. From June- July 2021, Plaintiff *was self-compelled to republish Def. Delta's 2021* unprivileged statements of purported facts of and concerning Plaintiff stating that Delta "received information that you (referring to Plaintiff) falsely represented" **facts** and that Plaintiff's "*misrepresentation…was intentional*," and/or that Delta "has decided to terminate your employment, effective immediately, on the grounds that *it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta*. Your failure to cooperate during the investigation also constitutes **insubordination,"** and/or publishing that Plaintiff was/is a *"fraud,"* and/or committed *"fraud,"* and/or is a **"liar"** and/or *"dishonest,"* and/or that Plaintiff was terminated and/or suspended for *"dishonest behavior" to* third

---

VERIFIED COMPLAINT FOR DAMAGES page 37

party California residents, such Erik Hildebrandt, who works for Jetblue, Aasir Azzarmi, and John Guiellere, etc.

103. Plaintiff repeats, re-alleges, adopts, and incorporates herein each and every allegation contained in each of the preceding paragraphs as though fully set forth herein. Plaintiff is informed and believes that Defendant Delta Airlines, Inc.,, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause and/or publish unprivileged external statements of defamation, of and concerning Plaintiff, to third persons and to the Los Angeles, CA community. These false and defamatory statements included express and implied statements that portrayed Plaintiff as a person who was/is a "fraud," and/or committed criminal acts of "fraud," and/or is a "liar" and/or "dishonest," and/or that Plaintiff was terminated and/or suspended for "dishonest behavior," and/or "insubordination."

104. These statements were outrageous, negligent, reckless, intentional, and maliciously circulated and recirculated by Defendant Delta Air Lines, Inc. and/or by Def. Delta's managers, managing agents, employees to California residents beginning around early April 2021 and published and/or republished these defamatory per se statements again in June 2021. Plaintiff is informed and believes that the negligent, reckless, and intentional statements by Defendants, and each of them, were and continue to be foreseeably circulated and recirculated by Defendant Delta, Delta's

Scanned with CamScanner

managers, managing agents, employees, and recipients in the Los Angeles community. Plaintiff hereby seeks damages for these statements and all foreseeable statements or publications discovered up to the time of trial.

105. During the above-described time-frame, Defendants (Delta, Kruit, Rosado) , conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited dissemination of defamatory statements, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom Delta Air Lines, Inc. disseminated this defamation are believed to include, but are not limited to, other agents and employees of Defendant Delta Air Lines, Inc, at Los Angeles LAX airport, Delta Air Lines, Inc.'s Purser/Supervisor Richard Lorich, Wendy Chau, Mayra Amezquita, who works for Southwest Airlines at Los Angeles LAX airport, Erik Hildebrandt, who works for Jetblue, Aasir Azzarmi, John Guiellere, Crystal Johson, Detev, Ashley and Evan who live in Playa Vista, CA, etc prospective employers (self-compelled defamation), all and/or most of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

106. The defamatory statements consisted of oral and written, knowingly false, and unprivileged communications, intending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation.

---

Scanned with CamScanner

107. Plaintiff is informed, believes, and fears that these false and defamatory per se statements will continue to be made by Defendant Delta Air Lines, Inc., and will be foreseeably recirculated by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable statements, including her own compelled self-publication of these defamatory per se statements (which she was compelled to do in May 2021 and/or June 2021 and/or July 2021 to prospective employers and/or other California residents when seeking new employment.

108. The defamatory meaning of all of the above-described false and defamatory statements, and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the Los Angeles, CA  community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

109. None of Defendants' defamatory statements against Plaintiff referenced above are true and/or partially true.

110. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendant Delta Air Lines and/or its agents and employees, and foreseeably republished by recipients of Defendants'

Scanned with CamScanner

statements, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

111. Each of these false defamatory per se statements (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies exists and/or existed), since the statements, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel and/or retaliatory actions of Defendant Delta Air Lines, Inc.,including but not limited to wrongfully/illegally terminating Plaintiff in violation of state/federal laws, to cause further damage to Plaintiff's professional and personal reputation and assassinate her character, and to cause her to be shunned, ostracized, avoided and avoided by the Los Angeles, CA community.

112. Each of these statements by Defendant Delta, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. Defendant Delta published these statements knowing them to be false and unsubstantiated by any reasonable investigation. These acts of publication were known by Defendant Delta, to be negligent to such a degree as to be reckless. In fact, not only did Defendant Delta have no reasonable basis to believe these statements, but Defendant Delta also had no belief in the truth of these statements, and in fact knew the statements to

Scanned with CamScanner

be false. Defendant Delta, excessively, negligently and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

113. The above complained-of statements by Defendant Delta were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, her reputation, professional reputation, and employability. Defendant Delta published these statements, not with an intent to protect any interest intended to be protected by any privilege but with negligence, recklessness, and/or an intent to injure Plaintiff and destroy her reputation. Therefore, no privilege existed to protect Defendant Delta from liability for any of these aforementioned statements. Furthermore, Richard Lorich, Wendy Chau, David Needham, Kelly Nabors, Danielle Kruit, Jose E. Rosado are/were employees and/or agents and/or managing agents of Defendant Delta, ACTING IN THEIR PROFESSIONAL CAPACITY as employees of a principal and/or corporation when they published the original unprivileged defamatory per se statements of purported facts that Plaintiff was/is a "fraud," and/or committed criminal acts of "fraud," and/or is a "liar" and/or "dishonest," and/or that Plaintiff was terminated and/or suspended for "dishonest behavior" and/or that Delta "received information that you (referring to Plaintiff) **falsely represented" facts** and that Plaintiff's "***misrepresentation…was intentional***," and/or that Delta "has decided to

Scanned with CamScanner

terminate your employment, effective immediately, on the grounds that *it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta*. Your failure to cooperate during the investigation also constitutes **insubordination."**

114. As a proximate result of the publications and republications of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business, and professional reputation including suffering mental anguish, embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, potential job opportunities and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

115. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from

Scanned with CamScanner

Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according t o proof at time of trial.

116. Defendants defamatory statements, which are all UNTRUE, were a substantial factor in causing Plaintiff harm.

117. Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court, over $75,000.00.

**SECOND CAUSE OF ACTION (Intentional Interference with Prospective Economic Advantage) (Against ALL DEFENDANTS)**See also Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal.App.4th 842, 845 ("The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition")Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1153.(**BASED ON DEFAMATION-**see CAUSE OF ACTION 1, **UCL violation, Labor Code violations, Wrongful Termination in Violation of Public Policy, Discrimination/Retaliation** in Violation of FEHA/42 USC 1981/ Title VII)

118. Plaintiff reinstates and incorporates by reference the allegations in the proceeding paragraphs of this Complaint as if fully set forth herein.

VERIFIED COMPLAINT FOR DAMAGES page 44

Scanned with CamScanner

119. Defendant Delta is liable to Plaintiff for its' interference with Plaintiff's prospective economic advantages.

120. From around March 26, 2021 through around July 1, 2021, *Def. Delta's managing agents, Bernadette Kamasi and/or Alberto Cuevas and/or Danielle Kruit and/or Jose Rosado and/or Kelly Nabors intentionally interfered with Plaintiff's prospective economic advantage by DEFAMING PLAINTIFF, which caused Def. Delta Air Lines, Inc. to revoke its written promise to Plaintiff to "transition" Plaintiff to a full time "benefit eligible" CSA Delta employee, as evidenced in "CONTRACT 2."(see attached Exhibit labeled "CONTRACT 2.")*

121. Defendant Delta's 2021 publications of unprivileged, false, defamatory per se statements of purported facts of and concerning Plaintiff to third party California residents was the act that is wrongfully independent of the interference itself. Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 392-93 (1995). An act is independently wrongful if "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (see FIRST CAUSE OF ACTION for DEFAMATION PER SE)

122. Beginning in September 2005, An economic relationship began to exist between Plaintiff and Def. Delta Air Lines,Inc. with the probability of future economic benefit to Plaintiff.

Scanned with CamScanner

123. Beginning on or around March 3, 2021, A new economic relationship existed between Plaintiff and Def. Delta Air Lines with the probability of future economic benefit to Plaintiff beginning on July 1, 2021, as evidenced by Exhibit 14..

124. A*s evidenced in Exhibit 14,* Def. Delta made written and oral assurances to Plaintiff on March 3, 20201 that *Plaintiff will "transition"to a full time "benefit eligible" CSA Delta employee on July 1, 2021.*

125. Defendant Delta and/or Delta's Managing Agents, *Bernadette Kamasi and/and/or Danielle Kruit and/or Kelly Nabors and/or* Jose Rosado, were fully aware of this relationship between Plaintiff and Def. Delta Airlines but deliberately sought to disrupt Plaintiff's economic relationship with Def. Delta Air Lines.

126. By Defendants Delta's conduct, Defendant Delta's managing agents have actually disrupted Plaintiff's relationship with Delta Airlines, as the unprivileged, published false statements of purported facts about Plaintiff and/or the reasons for Plaintiff's termination with Def. Delta Air Lines, Inc. to third parties have resulted in Plaintiff being unable to *"transition"to a full time "benefit eligible" CSA Delta employee on July 1, 2021.*

127. Plaintiff has therefore suffered damages as a result of the conduct of Defendant Delta's managing agents,, including lost salary, wages, benefits,

---

Scanned with CamScanner

401k, career opportunities, health insurance, profit sharing, pass travel benefits, career growth, etc.

128. An economic relationship existed between Plaintiff and Erik H. at JetBlue Airlines with the probability of future economic benefit to Plaintiff.

129. Defendant Delta and/or Delta's Managing Agent, Jose Rosado, was fully aware of this relationship between Plaintiff and Erik H, at JetBlue Airways but as explained above has nonetheless deliberately sought to disrupt Plaintiff's relationship with Erik H at Jetblue Airways.

130. By Defendants conduct, Defendants have actually disrupted Plaintiff's relationship with Erik H at JetBlue Airways, when Defendants published unprivileged, false statements of purported facts about Plaintiff to Erik H., a third party, which resulted in Plaintiff being unable to secure a job at Jetblue Airways. Plaintiff has therefore suffered damages as a result of Defendant Delta's conduct, including lost salary, wages, benefits, 401k, career opportunities, health insurance, career growth, etc.

131. Defendants' conduct includes an independently wrongful act consisting of publishing, unprivileged, knowingly false and unsupported statements of facts about Plaintiff to third party California residents.

132. Defendants actions, as alleged herein, were intentional, willful, malicious, oppressive and fraudulent, with wanton disregard for the rights of Plaintiff, and were engaged in for the purpose of benefiting Defendants injuring

Scanned with CamScanner

Plaintiff, so as to justify the awarding of exemplary and punitive damages in an amount subject to proof at trial.

**THIRD CAUSE OF ACTION- (Breach of Implied Covenant of Good Faith and Fair Dealing) (AGAINST ALL DEFENDANTS and DOES 1-10)**(See Harrell v. 20th Century Ins. Co. (9th Cir. 1991) 934 F.2d 203, 207-08; Marketing W., Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 614; BAJI 10.05, subd. (1).) (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 353, fn. 18.)(Shapiro v. Wells Fargo Realty Advisors (1984) 152 Cal. App. 3d 467, 478-79.); (Luck v. Southern Pacific Transportation Co. (1990) 218 Cal.App.3d 1, 26.).  Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1411 (9th Cir. 1991)(The implied covenant of good faith and fair dealing cause of action developed "to protect the job security of at-will employees who could be fired without cause under common law.") ; Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1147 (9th Cir. 1988))

133. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

134. Since September 2005, Plaintiff had a written and/or oral employment contract with Defendant Delta. Since around 2012 or earlier, Plaintiff had a binding Ready Reserve employment contract with Def. Delta, which was set to end in late June 2021, as Plaintiff and Delta entered into a new binding employment contract in or around February 2021. Around February 2021, Plaintiff entered into a new binding employment contract with Defendant

Scanned with CamScanner

Delta to become a full time employee, whereby the terms and conditions of

Plaintiff's new contract with Def. Delta Air Lines, Inc. was set to begin in July

2021.

135. These oral and/or written employment contracts were subject to an implied

covenant of good faith and fair dealing that all parties would act in good faith

and with reasonable efforts to perform their contractual duties—both explicit

and fairly implied—and not to impair the rights of other parties to receive the

rights, benefits, and reasonable expectations under the contracts. These

included the covenant that Defendant Delta would act fairly and in good faith

in carrying out its contractual obligations to provide Plaintiff with continual

employment until retirement and/or timely paid wages for work performed

and/or material benefits (such as pass travel benefits, health insurance

benefits, vacation/PPT, profit sharing, 401k, swapping benefits, seniority shift

bidding benefits, etc.)

136. Upon information and belief, Defendant breached the implied covenant of

good faith and fair dealing by intentionally misrepresenting and/or misstating

the written terms and conditions of Plaintiff's employment contract,

intentionally revoking Plaintiff's pass travel/swapping benefits in October

2018 and/or March 2021, misrepresenting and/or misstating Delta's

corporate policy on off-duty work conduct, suspending Plaintiff without pay

for what Plaintiff "stated" to EEOC/DFEH, government agencies, when

Scanned with CamScanner

Plaintiff was off-duty and/or not an active employee, refusing to apply Delta's written NO RETALIATION policy to Plaintiff after Plaintiff complained of illegal sex/race/disability discrimination/harassment  and retaliation., terminating Plaintiff's Ready Reserve contract to avoid entering into the new binding employment contract which would allow Delta to avoid paying Plaintiff any benefits, avoid paying Plaintiff's workers compensation claim, and/or paying retirement benefits, revoking Plaintiff's shift swapping benefits to prevent Plaintiff from earning income in violation of Plaintiff's Ready Reserve employment contract, intentionally refusing to pay wages for work performed in violation of Plaintiff's Ready Reserve employment contract. (Plaintiff was forced to be a class member of at least 3 class action lawsuits in past 7 years or so to force Delta to pay wages owed to Plaintiff and other workers Delta had employment contracts with.)

137. Plaintiff met all or substantially all of its contractual obligations as required by Defendant Delta's corporate polices and/or by the employment contract.

138. Defendant's failure to act in good faith in its' own written NO RETALIATION policy, failure to pay wages for work performed in violation of Plaintiff's Ready Reserve employment contract, failure to provide pass travel benefits at all times in violation of Plaintiff's Ready Reserve employment contract, failure to allow Plaintiff to work up to 1300 hours a year in violation of Plaintiff's Ready Reserve employment contract, etc, which denied Plaintiff

Scanned with CamScanner

1  the full benefit of its bargain under Plaintiff's Ready Reserve employment

2  contract.

3
4  139. Accordingly, Plaintiff has been injured as a result of Defendant's breach of

5  the covenant of good faith and fair dealing and is entitled to damages in an

6  amount to be proven at trial.

7
8  140. WHEREFORE, Plaintiff seeks: (a) a judgment for herself as Defendant

9  Delta has breached the covenant of good faith and fair dealing implied in its

10
11  employment contract with Plaintiff; and corresponding damages for that

12  breach.

13  **FOURTH CAUSE OF ACTION (Wrongful Termination of Employment in**

14  **Violation of Public Policy (Against Defendant Delta ONLY)) (sex/race/**

15
16  **disability/workers compensation discrimination and/or retaliation)**

17  (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167); Rojo v. Kliger (1990) -

18
19  276 Cal. Rptr. 130, 52 Cal. 3d 65, 801 P.2d 373.);); AGE: see Stevenson v.

20  Huntington Memorial Hospital 941 P.2d 1157 (Cal.1997); MEDICAL LEAVE,

21  see Stevenson v. Huntington Memorial Hospital 941 P.2d 1157 (Cal.1997); for

22
23  RACE, see Sistare-Meyer v. Young Men's Christian Assn. (1997) 58 Cal.App.

24  4th 10, 14, 16-17; DISABILITY, see Rope v. Auto-Chlor System of Washington,

25
26  Inc. (2013) 220 Cal.App, 4th 635, 660; (Workers Compensation retaliation- see

27  Santillan v. USA Waste of California, Inc. 853 F.3d 1035(9th Cir 2017);*Haney v.*

28  *Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641, 17 Cal.Rptr.

Scanned with CamScanner

3d 336 ( *Haney* );*Franklin v. The Monadnock Co.* (2007) 151 Cal.App.4th 252, 59 Cal.Rptr.3d 692; Green v. RaleeEng'g Co., 19 Cal. 4th 66, 76 (Cal. 1998);. SeeHolmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n. 8 (Cal. App. 4th Dist. 1993); INVASION OF PRIVACY  cf. Wilkinson v. Times Mirror Corp. (1989) 215 Cal. App.3d 1034, 1040-1044 [264 Cal. Rptr. 194] [constitutional right of privacy limits private as well as government conduct]; Labor Code 2922.

141.  The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

142. The fundamental public policy against sex discrimination and sexual harassment in employment, moreover, is plainly one that "inures to the benefit of the public at large rather than to a particular employer or employee." Quoting Rojo v. Kliger (1990) - 276 Cal. Rptr. 130, 52 Cal. 3d 65, 801 P.2d 373.); see Article I, Section 8 of the California Constitution.

143. From 2005- 2021, Plaintiff was employed by Def.Delta and thus had an employer-employee relationship;

144. Plaintiff, a California resident, was terminated by Def. Delta, a corporation doing business in California, on 06/17/2021 in Los Angeles, California.

145. Plaintiff's termination was a violation of public policy because it was in retaliation for Plaintiff engaging in the protected activity of opposing retaliation and/or opposing racial and sexual harassment/assault and/or sex

VERIFIED COMPLAINT FOR DAMAGES page 52

Scanned with CamScanner

discrimination by Def. Kruit and/or Ms. Tamasi and/or Alberto Cuevas and/or

Joseph Tumpap and/or Ashley Rangel, and/or expressing Plaintiff's intention

of filing a workers compensation claim and/or requesting a reasonable

accommodation and/or opposing Def. Delta's violation of Labor Code 96k

and/or other Labor Codes.

146. Plaintiff's termination was the legal cause and harm whereby Plaintiff

sustained damages.

147. Plaintiff suffered economic, psychological, emotional, physical, and

reputational damages as a result of Def. Delta's wrongful termination.

Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993)

148. Defendant Delta terminated plaintiff's employment in violation of various

fundamental public policies underlying both state and federal laws (ADA,

FMLA, FEHA, Title VII, 42 USC 1981, ADEA, California Constitution,

California Labor Codes , public policy against retaliation for refusing to

violate one's right to privacy under the California Constitution ( See Semore

v. Poole, 217 Cal. App. 3d 1087, 1097 (Cal. App. 4th Dist. 1990),  exercising

her First Amendment rights, public policy against discrimination or discharge

for filing Worker's Compensation claim under Cal. Labor Code, public policy

against unfair competition under Cal. Bus. & Prof. Code ) Specifically,

plaintiff's employment was terminated in part because of her protected

status (i.e., age, sex, race, disability and/or protected activity). These

Scanned with CamScanner

substantial and fundamental public policies were, at all times, constitutional or statutory provisions, which were well established at the time of discharge, as they benefitted the public as a while, not just Plaintiff as an individual.' Stevenson v. Superior Court, 16 Cal. 4th 880. 901-02 (Cal. 1997).

149. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

150. As a result of defendants' wrongful termination of her employment, plaintiff has suffered general and special damages in sums according to proof.

**FIFTH CAUSE OF ACTION(Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (Marvin v. Marvin (1976) 18 Cal.3d 660)—Against Defendant Delta )**

151. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

152. Defendant Delta, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and Defendant Delta, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of her under the agreement by performing her job in an exemplary manner.

Scanned with CamScanner

153. Defendant Delta and its' managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with her.

154. As a proximate result of Defendant Delta's  willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**SIXTH CAUSE OF ACTION (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (Marketing West, Inc. v. Sanyo Fisher (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against Defendant DELTA)**

155. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

156. On the basis of oral assurances of continued employment given to plaintiff by Defendant Delta's managers and/or supervisors, the length of plaintiff's employment with Defendant Delta, Defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and Delta shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted

---

Scanned with CamScanner

in an implied contract requiring that Delta have good cause to terminate plaintiff's employment.

157. Defendant Delta and it's managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

158. As a proximate result of Delta's willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

159. Plaintiff seeks costs and/or fees and/or lost wages under this cause of action under Labor Code section 218.6.

**SEVENTH CAUSE OF ACTION (As Against Defendant DELTA) VIOLATION of Labor Codes 201, 201.3, 201.5, 201.9, 202, 203, 205.5, 208, 213, 226, 227.3 (**Failure to pay wage on Discharge/ Waiting time penalties) Waiting time penalties California Labor Code § 201(a) states, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Section 203 sets forth penalties for failure to comply with §§ 201 and 202 and for waiting time penalties (§§ 201 and 202)**Bernstein v. Virgin America**., Inc., No. 19-15382, 2021 WL 686281 (**9th Cir**. Feb. 23, 2021);Labor Codes 202, 208, 213. See also Villafuerte v. Inter-Con Security Systems, Inc. (2002) 96 Cal.App.4th Supp. 45. Reid v. Overland Machined

Scanned with CamScanner

Products (1961) 55 Cal.2d 203. Labor Code 206.5. See also Chindarah v. Pick Up Stix, Inc. (2009) 171 Cal.App.4th 796; see also Watkins v. Wachovia Corp. (2009) 172 Cal.App.4th 1576.Labor Code 203  — Failure to make final payment. ("(a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."); see also McLean v. State of California (2016) 1 Cal.5th 615. Mamika v. Barca (1998) 68 Cal.App4th 487, 493. ("A proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days. This larger penalty acts as a disincentive to employers who are reluctant to pay wages in a timely manner, thus furthering the intent of the statutory scheme."); Drumm v. Morningstar, Inc. (N.D. Cal. 2010) 695 F.Supp. 2d 1014.Labor Code 227.3 LC — ("Unless otherwise prohibited by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract or of employment or employer policy respecting eligibility or time served;. See also Triad Data

VERIFIED COMPLAINT FOR DAMAGES page 57

Scanned with CamScanner

Services, Inc. v. Jackson (1984) 153 Cal.App.3d Supp. 1. See also Henry v. Amrol, Inc. (1990) 222 Cal.App.3d Supp. 1. See also Suastez v. Plastic Dress-Up Co. (1982) 31 Cal.3d 774. See also Labor Code 227.2 & 206.5. See also Boothby v. Atlas Mechanical, Inc. (1992) 6 Cal.App.4th 1595; Henry v. Amrol, Inc. (1990) 222 Cal.App.3d Supp. 1; Woods v. Fox Broadcasting Sub., Inc. (2005) 129 Cal.App.4th 344; DLSE Opinion Letter 1993.08.18; DLSE Opinion Letter 1990.09.24.

160. Delta failed to provide a copy of all of Plaintiff's employment records upon reasonable request by Plaintiff.

161. .Delta, as a California employer, failed to pay wages immediately to Plaintiff upon being terminated within 72-hours..

162. Delta is liable to pay a waiting **time penalty equal to the employee's daily rate of pay for each day late up to 30 days.**

163. Def. Delta violated California Labor Codes 201, 201.3, 201.5, 201.9, 202, 203, 205.5, 208, 213, 227.3  by failing to pay Plaintiff her vacation time and PPT time, within 72 hours of termination, which occurred on June 17, 2021.

164. Def. Delta  failure to pay wages on Discharge within 72 hours entitles Plaintiff to Waiting time penalties.

165. Def. Delta has failed to pay Plaintiff approximately 72 Hours of vacation and PPT time upon termination on 06/17/2021.

VERIFIED COMPLAINT FOR DAMAGES page 58

**EIGHTH CAUSE OF ACTION-(Violation of the California Unfair Competitions Law ("UCL") Cal. Bus. & Prof. Code § 17200, Cal. Bus. & Prof. Code § 17204. et seq.)** (Against Defendant **DELTA**).See Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 337.. See Korea Supply Co. v. Lockheed Martin Corp. (2002) 29 Cal.4th 1134, 1147.

166. Plaintiff incorporates and realleges by reference the foregoing allegations as if fully set forth herein.

167. Business and Professions Code section 17200 et seq. (the Unfair Competition Law or UCL) prohibits any unlawful, unfair or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any violation of Business and Professions Code section 17500 et seq. Defendant Delta's unfair business practice, in violation of California and/or Federal laws, caused Plaintiff to lose money from 2011-2021.

168. Defendant Delta violated the UCL by engaging in unlawful, unfair, and fraudulent business acts or practices, including but not limited to: (a) knowingly and intentionally discriminating against employees based on their gender, disability, race, age, and/or for exercising their rights under the **FEHA** and denying them full and equal treatment on the basis of their race and/or ethnicity; and/or for not paying Plaintiff wages upon discharge entitling Plaintiff to waiting time penalties (b) **defamation-**making and/or

Scanned with CamScanner

disseminating false, misleading, and deceptive statements to the public about Plaintiff and/or other employees before and/or during and/or after termination to defame employees who oppose Defendant Delta's illegal discrimination/retaliation and failure to pay wages, and for exercising Plaintiff's First Amendment rights (c) Delta's Intentional Suspension and/or Terminated of Plaintiff **for legal off-duty conduct violated California Labor Code section 96(k)** provides protections for employees who are terminated for "lawful conduct occurring during nonworking hours away from the employer's premises." California Labor Code Section 96(k) makes the following conduct illegal: "... demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises."**(d) Invasion of Plaintiff's Privacy,** Article 1, Section 1 of the California Constitution gives each citizen an "inalienable right" to pursue and obtain "privacy."  California's constitutional right to privacy  guarantees the privacy right is "an inalienable right which may not be violated by anyone" including private parties.  (e) Delta's violation of California Labor Code section 96(k), In April Plaintiff exercised her rights under 96(k) and  Article 1, Section 1 of the California Constitution when she emailed Def. Delta's HR Manager, Danielle Kruit saying, **"So therefore I have no new information except to inform you that I'm filing a complaint with the California Labor Commissioner for being**

VERIFIED COMPLAINT FOR DAMAGES page 60

Scanned with CamScanner

suspended for lawful off duty Conduct , for loss of wages and being retaliated against under Labor Code section 96(k) which Provides the Labor Commissioner with authority to be assigned claims for loss of wages that arise from retaliation for lawful conduct occurring during nonworking hours and away from the employer's premises.California Labor Code section 96(k) provides protections for employees who are terminated for "lawful conduct occurring during nonworking hours away from the employer's premises." California Labor Code Section 96(k) makes the following conduct illegal: "... demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises." (e) Failure to pay wages upon termination and/or refusing to pay wages in general and/or refusing to pay overtime and other wages since 2011 and/or impairing impairing Plaintiff's Ready Reserve employment contract to interfere with her FMLA/CFRA rights, by revoking her swapping benefits from October 2018- 2021, which would've allowed Plaintiff to earn income and make extra hours; . (f) Intentionally interfering with Plaintiff's Prospective Economic Advantage, (job and yearly salary with JetBlue) inEven after informing Def. Delta that it was violating California Labor Code section 96(k)  and California Constitution, Def. Delta retaliated with termination on 06/17/2021 because Plaintiff engaged in protected activities.

Scanned with CamScanner

169. The California UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, et seq. As alleged above, Delta violated California public policies and/or FEHA and/or Defamation statutes and  Labor Codes, intentionally refused and failed to pay Plaintiff wages and such violations are an unlawful practice under the UCL.

170. Delta's violation of the CIPA and/or California Privacy is also an unfair business practice under the UCL. Delta's conduct contravenes established and codified California public policy safeguarding the privacy interests of its citizens.

171. As a direct and proximate cause of Delta's unlawful and unfair business practices in violation of the UCL, Plaintiff has suffered injury and are entitled to declaratory and injunctive relief and an award of their damages as set forth below. Moreover, because Delta violated the UCL with a willful and conscious disregard of the rights or safety of Plaintiff, Delta is also liable to Plaintiff for punitive damages pursuant to Cal. Civil Code § 3294(a).

**NINTH CAUSE OF ACTION-Breach of Contract (AGAINST ALL DEFENDANTS)**

172. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

173. Plaintiff and Def. Delta had 2 employment contract(see attached Exhibits labelled as "CONTRACT 1" and "CONTRACT 2." These were binding

---

Scanned with CamScanner

contracts that constituted the terms and conditions of employment and/or continued employment.

174. Plaintiff met all of the contractual obligations in both 2 contracts.

175. One of the explicit major term and condition of Def. Delta's Ready Reserve contracts is that a Ready Reserve employee is entitled to shift swapping benefits and/or pass travel benefits in exchange for their labor.

176. As evidenced by Exhibit F (page 31), *"Ready Reserve employees may be eligible for FMLA, provided they meet all of the requirements in HRPM 1028.6 concerning FMLA."*\*\*\*\*\*\*\*\*

177. Beginning around October 2018 through around July 17, 2021, Def. Delta and/or Def. Rangel refused to honor and/or met any and/or all of the contractual obligations included in Def. Delta's Ready Reserve contract.

178. Beginning on or around October 1, 2018 and continuing through the date of the filing of this Complaint, Plaintiff suffered the direct physical loss of property and loss of income following Def. Delta's breach of Plaintiff's 2 employment contracts.

179. There were no applicable, enforceable exclusions in Plaintiff's comprehensive employment contracts that allowed Def. Delta to revoke her pass travel benefits and/or shift swapping benefits or terminate her without good cause.

---

Scanned with CamScanner

180. Defendant Delta breached its contracts by denying Plaintiff the benefits and/or income it was contractually obligated to offer Plaintiff in exchange for Plaintiff's time and/or labor and/or availability for Delta' operation.

181. As a direct and proximate result of Defendant Delta's intentional failure to met all of it's contractual obligations to Plaintiff in their mutual 2 employment contracts, Plaintiff suffered damages.

182. WHEREFORE, Plaintiff seeks: (a) a judgment that Defendant Delta breached 2 of its employment contracts with Plaintiff; and (b) corresponding damages for that breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violated both Federal laws & the laws of the State of California  and that Defendants defamed Plaintiff falsely accusing Plaintiff of committing crimes;

B. An injunction and order permanently restraining Defendants from engaging in future defamatory conduct by continuing to publish these false unprivileged defamatory per se statements  of purported facts about Plaintiff being a "fraud," committing "fraud," and being a "liar" and/or "dishonest," and/or that Plaintiff was terminated and/or suspended for "dishonest behavior."

---

VERIFIED COMPLAINT FOR DAMAGES page 64

C. Economic damages: As a consequence of Defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment

benefits, damage to her career, lost wages, overtime, unpaid wages, expenses, costs, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial. An award of damages, in a sum in excess of the jurisdictional minimum of the Federal Court, to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, the loss of past and future income, wages, monthly bonuses, yearly profit sharing, yearly PPT/vacation pay, quarterly and/or yearly bonuses, 401k matching, health insurance benefits, Delta pass travel benefits and other benefits of employment;

D. Non-economic damages: As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial. An award of damages, in a sum in excess of the jurisdictional minimum of the $75,000.00, to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for her depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence,

VERIFIED COMPLAINT FOR DAMAGES page 65

Scanned with CamScanner

emotional pain and suffering, harm to her personal and professional

reputations and loss of career fulfillment;

E. An award of damages for any and all other monetary and/or non-monetary

losses suffered by Plaintiff in an amount to be determined at trial, plus

prejudgment interest;

F. An award of Punitive damages: Defendants' conduct constitutes oppression,

fraud, and/or malice under California Civil Code section 3294 and, thus,

entitles plaintiff to an award of exemplary and/or punitive damages.

a. Malice: Defendants' conduct was committed with malice within the meaning

of California Civil Code section 3294, including that (a) defendants acted with

intent to cause injury to plaintiff and/or acted with reckless disregard for

plaintiff's injury, in- cluding by terminating plaintiff's employment and/or taking

other adverse job actions against plaintiff because of her sex, race, disability

and/or perceived disability, color, sexual orientation, opposition to illegal

discrimination, and/or for making  good faith complaints to DFEH/EEOC , and/

or in retaliation for filing this lawsuit, and/or (b) defendants' conduct was

despicable and committed in willful and conscious disregard of plaintiff's rights,

health, and safety, including plaintiff's rights to be free of discrimination,

harassment, sexual assault, right to file a workers compensation claim and/or

engage with an attorney to prosecute Plaintiff's rights under state Worker's

Scanned with CamScanner

Compensation laws, and/or rights to be free from retaliation for exercising rights under ADA/FEHA/FMLA/CFRA and wrongful employment termination.

b. Oppression: In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of her sex, race, disability and/or perceived disability, color, sexual orientation, opposition to illegal discrimination, and/or for making good faith complaints to DFEH/EEOC, and/or in retaliation for filing this lawsuit, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, sexual assault, retaliation for filing a workers compensation claim/engaging an attorney to prosecute Plaintiff's rights under state Worker's Compensation laws, retaliation for exercising rights under ADA/FEHA/FMLA/CFRA and wrongful employment termination, and/or making good faith complaints, were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, and wrongful employment termination.

c. Fraud: In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment

---

VERIFIED COMPLAINT FOR DAMAGES page 67

Scanned with CamScanner

and/or other adverse job actions, thereby to cause plaintiff hardship and

deprive her of legal rights.

G. An award of costs that Plaintiff incurred in this action, as well as Plaintiff's

fees and costs of prosecuting this action to the fullest extent permitted by law;

H. FRONT PAY: Traxler v. Multnomah Cty., 596 F.3d 1007, 1012 (9th Cir. 2010)

I. RESTITUTION: Restitution is the only form of damages available under the

UCL. See Korea Supply Co. v. Lockheed Martin Corp. (2002) 29 Cal.4th

1134, 1147.

J.WAITING TIME PENALTIES under LABOR CODES

K. PUNITIVE DAMAGES(Adams v. Murakami, 813 P.2d 1348, 1357 (Cal.

1991)).

L.INJUNCTIVE RELIEF prohibiting Def. Delta and/or  Def. Delta's employees/

managers/agents from continuing to republish their defamatory per statements

about Plaintiff to other Delta employees and/or third parties and/or other

California residents. Balboa Island Village Inn, Inc. v. Lemen, 40 Cal.4th 1141,

156 P.3d 339 (2007), the California (California Supreme Court held that "the

court may issue an injunction prohibiting the defendant from repeating the

statements determined to be defamatory.")

M. PLAINTIFF IS SUING Defendants for $100,000,000.00 or for any relief that

the Court or jury awards Plaintiff for past, present, and future economic harm

and economic damages.

Scanned with CamScanner

*********************************JURY DEMAND ************************************

Plaintiff hereby demands a trial by jury on all issues of fact, liability and damages stated herein.

Date: 01/31/2022

ERIKA L. LEE, PLAINTIFF, PRO SE

## **VERIFICATION OF COMPLAINT**

I, Erika L. Lee, being duly sworn, deposes and says that:

I am the Plaintiff in this action, representing myself Pro Se. I have read the annexed First Supplemental Verified Complaint, knows the contents thereof and the same are true to my personal knowledge, except these matters which are stated to be alleged "upon information and belief, and as to those matter I believe them to be true or believed them to be true at a previous time. I declare under penalty of perjury under the laws of the California, the United States & U.S. Code § 1746 that the foregoing is true and correct.

Date: 01/31/2022

ERIKA L. LEE, PLAINTIFF, PRO SE

VERIFIED COMPLAINT FOR DAMAGES page 69

Scanned with CamScanner

**DECLARATION OF MAYRA AMEZQUITA**

I, Mayra Amezquita, being first duly sworn, declare and testify as follows:

1. I, Mayra Amezquita, have personal knowledge of all of the facts in this Declaration and the information set forth in this Declaration is true and correct to the best of my knowledge, except where stated "upon information and belief." Every fact in this Declaration is based solely on my personal knowledge. I, Mayra Amezquita, declare that if called as a witness, I am competent to testify as to all matters herein if called to do so and will testify to the same at trial.

2. I, Mayra Amezquita, am a Los Angeles, California resident, who was previously employed by Delta Air Lines, Inc. at Los Angeles International Airport.

3. Attached hereto as Exhibit A is a true and correct copy of Danielle Kruit's "June 15, 2021" letter addressed to "Erika," that I received in the mail from Delta Airlines around June 26, 2021.

4. Attached hereto as Exhibit B is a true and correct copy of Jose Rosado's "June 17, 2021" letter addressed to "Erika," that I received in the mail from Delta Airlines around June 26, 2021.

5. After receiving Danielle Kruit and Jose Rosado's letters in the mail from Delta Airlines, Inc. around June 26, 2021, I gave these letters to Erika Lee on or around June 27, 2021. Even though these letters only say "Erika" on them, I assumed they were for Erika Lee again since Delta previously sent Erika Lee's March 2021 Suspension Letter here to this same address as well, where Delta Airlines previously wrote that Erika Lee was suspended for her "dishonest behavior," and Jose Rosado's Termination letter is basically saying similar things, as does Danielle Kruit's letter. No other Erika that I know of lived at this address in the past few years who also worked for Delta Airlines. Also, Erika Lee admitted to me that the last Suspension letter was

EXHIBIT 1

Scanned with CamScanner

meant for her and told me on June 27, 2021 that she recently received a similar termination letter from Jose Rosado, who is a Delta Airlines manager, via email.

6. Around the first week of July 2021, America Serrano, who works for Alaska Airlines at Los Angeles Airport, told me that Delta Airlines employee, Wendy Chau, who is based at Los Angeles airport, told America in June 2021 that "Richard Lorich told me that Erika Lee was terminated from Delta Airlines for being a liar and a thief because she was doing fraud on Delta by filing a false workers compensation claim so she didn't have to work."

7. On July 11, 2021, I told Erika Lee what Delta employee Wendy Chau told America Serrano that Wendy Chau heard from Delta employee Richard Lorich.  Richard Lorich also told me something similar about Erika Lee in May 2021 at Los Angeles Airport too.

8. I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the State of California and the U.S. that the foregoing is true and correct. Executed in Los Angeles, CA on 07/15/2021.

**MAYRA AMEZQUITA**

June 15, 2021

Erika:

On February 17, 2019, David Needham (Senior Human Resources Manager for JFK in New York) telephoned you in an effort to investigate new complaints made by you regarding Bernadette Tamasi (who worked in LaGuardia Airport (LGA) in New York while you worked in LGA with her). At that time, he left a message for you to call him back so that he could get additional information from you. You did not return his phone call as requested and have not provided additional information.

Notwithstanding the lack of information or cooperation from you, we took steps to look into your new claims. We note in April 2019, when you worked at LGA, you made complaints regarding a variety of matters, including allegations against Ms. Tamasi. Those complaints were investigated at the time, however, at that time, you did not raise the allegations you now have raised against Ms. Tamasi, including but not limited to the allegation that she "spanked" you. Ms. Tamasi denies your claims and we find her credible. We do not find your allegations credible.

Based on the foregoing, we do not believe that that the conduct alleged occurred and we are closing this matter.

Danielle Kruit
Danielle.kruit@delta.com
HR General Manager
Delta Air Lines, Inc.



June 17, 2021

Erika:

We initially reached out to you on March 26, 2021 to inform you that you were being suspended from your position at John F. Kennedy International Airport (JFK) in New York in connection with our investigation of a complaint that you had been dishonest in connection with your relations with Delta. We received information that you falsely represented that you had had a conversation with David Needham (Senior Human Resources Manager for JFK in New York) on February 19, 2021 in which he allegedly made a variety of statements concerning an investigation he was conducting into complaints raised by you regarding another employee who worked in LaGuardia Airport (LGA) in New York while you worked in LGA with her.

Based on the information we have collected at this time, your evasive demeanor during our interview and written exchanges, and the lack of cooperation by you during this investigation, we do not believe the alleged conversation with David occurred. We also believe that your misrepresentation of that conversation was intentional.

In light of the foregoing, Delta has decided to terminate your employment, effective immediately, on the grounds that it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta. Your failure to cooperate during the investigation also constitutes insubordination.

Please return to Pam Bissoondial any Delta materials in your possession, such as your Delta identification card and your parking permit if not already done so.

There is an appeal opportunity through the Equal Opportunity team via appeals.co@delta.com. Please provide a written request and be sure to include your employee number and your email address, mailing address, and telephone number. Your appeal will be reviewed, and a written response will be sent to you. If you have any questions about the appeal process, please contact your divisional leadership team.

Please note when an employee is terminated from the Company, they are no longer eligible for rehire at Delta or any Delta subsidiary. As a reminder, the Employee Assistance / Resources for Living can be reached 24/7 at 800-533-6939.

Feel free to contact me directly at jose.e.rosado@delta.com if you have any questions.

Jose Rosado

Sincerely,





🔍 Search  💬



## Jose Rosado

General Manager at Delta Air Lines

Baruch College · Delta Air Lines

Miami-Fort Lauderdale Area · 398 connections

[ Connect ]  [ 🔒 Message ]

### About

A results-oriented professional, recognized for a collaborative leadership st ...See more

### Activity

397 followers

 **So proud of our PrimeFlight Aviation Services team as we continue to grow...**
Jose Rosado liked this

See all

### Experience

 **General Manager Customer Service**
Delta Air Lines
Jun 2021 - Present · 2 mos
JFK Internaltional Airport

 **JetBlue**
13 yrs 11 mos

**General Manager**
Jan 2020 - Jun 2021 · 1 yr 6 mos

**Manager Business Partner Compliance & Aircraft Repoitioning**
Aug 2007 - Jun 2021 · 13 yrs 11 mos
FLL-Hollywood Int'l Airport Terminal 3 Fort Lauderdale, Fl. 33315

▤ Manager FLL BUSINESS PARTNER COMPLIANCE 2019

Contract evaluation and administer adherence through regularly sch ...more

 **Manager**
Joluro Inc.

 Home   My Network   Post   Notifications   Jobs

EXHIBIT 2

Scanned with CamScanner

# EXHIBIT 3

From: **Kruit, Danielle R** <danielle.kruit@delta.com>
Date: Friday, June 11, 2021
Subject: Re:Reasonable Accommodation Request
To: Erika Lee <leeerikalatise@gmail.com>

Dear Ms. Lee,

As you know, on March 30, 2020, you started a personal convenience leave of absence from your Ready Reserve Agent position in New York (JFK), which was extended per your request. You were set to return from leave on May 1, 2021. However, on March 26, 2021, you were suspended pending an investigation into a complaint that you made false statements in relation to Delta. We expect to conclude that investigation soon and will send you communication about its conclusion at that time.

Delta has no records of you requesting a transfer from your New York (JFK) position during the time you were on a leave of absence. To the extent you are seeking a transfer while on suspension, that is not a request Delta would consider. If you are taken off suspension and returned to active status, such a request would be reviewed and considered at that time.

Additionally, because you elected a nonpaid personal convenience leave of absence for the prior year, there is no monetary difference between that and your current suspension status. Moreover, as a Ready Reserve Agent in JFK, you are not eligible for vacation or health benefits. This is also true for the Ready Reserve positions you mention below.

Thanks,

 Danielle


**From:** Erika Lee <leeerikalatise@gmail.com>
**Sent:** Tuesday, June 08, 2021 11:15 AM
**To:** Kruit, Danielle R <danielle.kruit@delta.com>
**Cc:** Nabors, Kelley <Kelley.Nabors@delta.com>

**Subject:** [EXTERNAL] Re:Reasonable Accommodation Request

This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.

Hello Danielle,

In regards to my request Reasonable Accommodation of a transfer for  my disability (mobility impairment), I had asked David Needham in February 2021 for transfer to any open  Cargo position in California,  as I have experience in Cargo and I was allowed to sit down for almost the entire time, which accommodated my disability.  David Needham told me to ask you, his boss, about accommodating my disability because he said he has no authority. So I made several reasonable accommodation requests  over 2 months ago before and after Being suspended , yet Nobody at Delta has ever gotten back to me about my Reasonable accommodation requests that I made in February and March  2021, it is now June 2021 . There are open Ready Reserve Cargo positions in SFO and OAK on delta.com that I asked for and would definitely accommodate my disability of mobility impairment  upon return from suspension.   When am I coming off suspension ?   How long is this suspension expended to last ?    Because of this retaliatory suspension , I'm being economically harmed , yet I'm still employed at Delta, you took away all my benefits and I even had PPT and paid vacation time that began on April 1, 2021 that I earned previously.    Are you paying me out for this while keeping me on suspension?    Please advise. Thanks.

Sincerely,



Erika Lee

On Friday, April 2, 2021, Kruit, Danielle R <danielle.kruit@delta.com> wrote:

> I will be on vacation from Friday, April 2nd - Friday April 9th. If you need immediate assistance, please reach out to David Needham at 718-704-2716.
>
> I will respond as soon as possible.

Scanned with CamScanner

Thanks,

Danielle Kruit

View Gmail in: **Mobile** | Older version | Desktop
© 2021 Google

# EXHIBIT 3

Scanned with CamScanner

a year. My personal cell phone records have nothing to do with  me Opposing The illegal discrimination and retaliation and hostile work environment that Delta Managers subjected me to.

Sincerely

Erika Lee

On Friday, April 2, 2021, Kruit, Danielle R <danielle.kruit@delta.com> wrote:

> Erika,
>
> Thanks for contacting me yesterday. To recap our conversation, I asked you a series of questions regarding the call you stated you had with David Needham. You were not able to provide specific answers to the questions as to when this call occurred and what was discussed. You stated that you could not recollect the details and needed to review your notes and respond to me in writing. You stated you needed a week to review your notes and respond to the questions asked. Therefore, you agreed to send me a statement by Thursday, April 8, 2021, 5pm. Please also include the voicemail left by David on February 17, 2021 and your phone records documenting the phone calls.
>
> I look forward to the additional information.
>
> Danielle Kruit, SPHR
>
> HR General Manager
>
> ACS/CGO East
>
> O: 734-921-7731
>
> M: 734-604-9405



EXHIBIT 3

> **From:** Erika Lee <leeerikalatise@gmail.com>
> **Sent:** Tuesday, March 30, 2021 6:12 PM
> **To:** Kruit, Danielle R <danielle.kruit@delta.com>

Scanned with CamScanner

To: Kruit, Danielle R <danielle.kruit@delta.com>

**Subject:** [EXTERNAL] Suspension for "dishonest behavior"

This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.

Hello Ms. Kruit,

# EXHIBIT 3

I received the Suspension letter into my alleged "dishonest behavior."  I don't believe I have never met you before. Are you based in Detroit or Atlanta ?  I have never worked in Detroit or Atlanta. Who told you I was "dishonest" or committed some "dishonest behavior?" I am just really confused as to how I am "dishonest" or how or when I committed some "dishonest behavior" and how this warranted me being suspended.  This is clearly retaliation for my recent February 2021 complaint to HR of sexual harassment/sexual assault by Delta Manager Bernadette Komasi who has been asking me to show her my "black cat" since 2017  , amongst other things and who even spanked my butt in 2020.  Less than 1 month ago I reported that to HR and now , in retaliation, I'm suspended and Delta  took away my pass travel benefits to retaliate against me for complaining about sexual harassment.   The truth is I, a black woman, am being retaliated against for not wanting to be sexually harassed at work by a white lesbian Delta Manager.   I would like to know who exactly is making these "allegations" that I'm "dishonest."

So should I call you on April 1,2021 as it states in that Suspension letter ?  I'm on the West Coast so please dont move the time before PST business hours.  Also , I recently became a full time employee and was expecting to begin receiving health care benefits , which I need for my disability.  So I'm requesting a reasonable accommodation that any health insurance benefits not be interrupted as I have a disability that I will need to see a doctor and get medication. Are the health insurance benefits  going to be Also taken away as well ?  How long am I suspended for ?   Am I coming back to work on May 1?

I remember when I last opposed sexual harassment by Manager Bernadette Komasi in April

Scanned with CamScanner

AA   🔒 mail.google.com   ↻

‹ 'Reaso...                          ⊡   🗑   ▼

Automatic reply: [EXTERNAL] Re: Reasonable Accommodation   ☆
Request   Inbox

**K**   **Kruit, Danielle R**                                    ↩
danielle.kruit@delta.com
Hide details

To:   **E**   Erika Lee

Date:   April 2, 2021, 2:09 PM

I will be on vacation from Friday, April 2nd - Friday April 9th. If you need immediate assistance, please reach out to David Needham at 718-704-2716.

I will respond as soon as possible.

Thanks,

Danielle Kruit



EXHIBIT 3

↩ Reply                    ➡ Forward

View Gmail in: **Mobile** | Older version | Desktop
© 2021 Google

Scanned with CamScanner

2019 to Delta's Equal Opportunity Department, Delta suspended me for 2 weeks and caused me to lose income to retaliate against me. So now . Am I only being suspended for 2 weeks again like last time for opposing sexual assault (being spanked) by Manager Bernadette Komasi or is this suspension going to be longer than 2 weeks ?   In 2018 , when I opposed sexual harassment by Manager Bernadette Komasi to Ashley Rangel , I was retaliated against and had my swapping benefits revoked, pass travel benefits revoked ,seniority shift bidding privileges revoked , denial of FMLA , denied me ability to pick up hours to earn income. The retaliation is relentless because I'm a black women with a disability.   What is really disturbing is how Delta allows white women (Erin Pieroni , Delgado, Maria Tamburrini, etc ) employees to oppose sexual harassment by non white men (Neil Muhammed and Joe Jackson ) in the workplace without any retaliation (suspensions or benefits taken away ) but when black women (me , Donya Williams ) make a complaint about being sexually harassed , we are called names, labeled "dishonest" and immediately retaliated against by Delta and/or racially hostile white HR managers such as yourself. This is racial discrimination. Why are black women at Delta never treated equally at Delta?     If I were white like those white women (Erin Pieroni , Delgado , etc ) who accused Joe Jackson , a black male Manager , without any evidence , I would never be branded "dishonest" as Erin Pieroni etc were never told by HR Manager William Ittounas that  they were "dishonest.". Then, Joseph Jackson , a black man , was terminated based solely on Erin Pieroni's word because she's a pretty blond white female , she is automatically considered "honest" but when I , a black woman , complain about a white lesbian women sexually harassing me and sexually assaulting me (with witnesses ) I'm labeled "dishonest" by white HR Managers at Delta who don't even know me and were not there at the time. You and Delta are perpetuating violence against black women.   Because of my race and gender I'm being disparately disciplined and disparately retaliated against for the same exact protected  "conduct" that white women Erin Pieroni Maria Tamburrini and Delgado engaged in , but who were never suspended for .   It's not a surprise that many  people are publicly boycotting Delta this week , as Delta continues publicly perpetuating racism to disenfranchise blacks and poc and society is now aware of Delta's racism and protesting it.

Sincerely,

# EXHIBIT 3

Erika Lee

Scanned with CamScanner

 linkedin.com



**Danielle Kruit, SPHR**

Human Resource General Manager at Delta Air Lines

Villanova University • Delta Air Lines

Livonia, Michigan, United States • 500+ connections

 Connect     Message

### About

Senior level human resource manager with over 20 years of experience incl ...See more

### Activity

624 followers

**Great visit this week with DVP Kelly Blankenship and DM Hoai Ta. Special...**
Danielle Kruit, SPHR liked this

See all

### Experience

 **Delta Air Lines**
1 yr 11 mos

**Human Resource General Manager**
Jan 2021 - Present · 7 mos
Atlanta Metropolitan Area
Senior level HR Manager leading the Airport Customer Service and Cargo East Division

**Sr. Human Resource Manager, Airport Customer Service and Cargo Operations, DTW & MSP**
Sep 2019 - Present · 1 yr 11 mos
Greater Detroit Area
HR leader responsible for 2nd largest hubs, DTW and MSP, for Delta Air Lines, Inc.

 **Human Resources Manager**
Delta Air Lines, Airport Customer Service and Cargo Operations, DTW
Aug 2014 - Present · 7 yrs

EXHIBIT 4

 Home     My Network     Post     Notifications     Jobs

Scanned with CamScanner



From: **Erika Lee** <leeerikalatise@gmail.com>
Date: Friday, April 2, 2021
Subject: Re: Reasonable Accommodation Request
To: "Kruit, Danielle R" <danielle.kruit@delta.com>
Cc: Kelley.nabors@delta.com


Danielle,

What were the exact questions you had that you want me to respond to in writing ?  Please email them to me.

I asked for a Reasonable Accommodation for my disability  in February 2021 and in March 2021 and Delta and you and David and HR and Equal Opportunity have still refused to engage in the interactive process once again.

I don't recall ever  telling you Personally or anyone at Delta that  I have a "voicemail left by David on February 17, 2021 "and "phone records documenting the phone calls" so please cease and desist from  harassing me about my Personal cell phone records that you are not privy to . This is an invasion of my privacy . Delta does not own my phone nor does Delta pay my cellular phone bills so You have no right to demand to see my personal cell phone records or to be asking me who I'm dating, living with , sleeping with or communicating with when I am not in my profession capacity and/or not an active Delta employee.  You have no right to know who I'm dating, living with , sleeping with or communicating with when I am not in my professional capacity at Delta and/or not an active Delta employee.  Shall you not cease and desist from harassing me about my personal phone records , I will get a Court Order for you to stop harassing me, as this is an invasion of privacy , as you are not a law enforcement agency and you must cease and desist fromStalking me and putting me under constant surveillance. Also  , I never once told you that I called David from my personal cell phone. I called him from an airport phone, so I wouldn't have access to those phone records.  Once again, if you continue to harass me and demand  personal phone records that you are not privy to , I will seek a restraining order against you.  You have no right to know anything about my off duty conduct, as I have been on a leave of absence for almost

Scanned with CamScanner

# EXHIBIT 5

From: **Kruit, Danielle R** <danielle.kruit@delta.com>
Date: Wednesday, March 31, 2021
Subject: Suspension for "dishonest behavior"
To: Erika Lee <leeerikalatise@gmail.com>


Dear Erika,


Thank you for your email response.  As indicated previously, please contact me tomorrow Thursday April 1, 2021 at 1:00pm EST at 734-604-9405 to discuss the allegations of dishonest behavior with me and another member of management.  I look forward to receiving your call then.


Danielle Kruit



**From:** Erika Lee <leeerikalatise@gmail.com>
**Sent:** Tuesday, March 30, 2021 6:12 PM
**To:** Kruit, Danielle R <danielle.kruit@delta.com>
**Subject:** [EXTERNAL] Suspension for "dishonest behavior"

Scanned with CamScanner